IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALLEN BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 23-cv-4020-DWD |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Allen Brown, a former inmate of the Illinois Department of Corrections (IDOC) brought this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Specifically, he alleged that Wexford Health Sources, Inc., failed to adequately staff a dentist at Shawnee Correctional Center (Shawnee), which caused a lengthy delay in dental treatment for his infected or damaged teeth. Wexford seeks summary judgment on Plaintiff's failure to exhaust administrative remedies. (Docs. 32, 33). Plaintiff was notified of his obligation to respond, but he has not responded. Nevertheless, the Court finds it appropriate to deny the motion for summary judgment.

## BACKGROUND

Plaintiff alleged in the complaint that he was seen by a member of the dental staff on August 23, 2023, at which time he was placed on the extraction list. (Doc. 1 at 6). He claimed that despite being placed on the extraction list in late-August 2023, that as of the filing of his complaint on December 14, 2023, he had yet to be seen for an extraction. He

attributed the lack of care to Wexford's failure to staff a full-time dentist at Shawnee. (Doc. 1 at 6). He further claimed that grievance responses showed that Wexford "has had this policy for more than 4 months." (Doc. 1 at 6). With the complaint, Plaintiff enclosed a grievance about the issue. (Doc. 1 at 9-12).

Based on the allegations in the Complaint, which are more fully recounted in the Order of Initial Review (Doc. 10), the Court allowed one claim:

> Claim 1: *Monell* claim against Wexford Health Sources, Inc. for failing to provide adequate staffing at Shawnee to meet Plaintiff's dental needs.

(Doc. 10 at 3).

The parties have submitted multiple relevant grievances that will be discussed below.

## FINDINGS OF FACT

Plaintiff submitted an emergency grievance on September 1, 2023, about his need for dental care. The grievance was assigned number 2023-9-56, and it was approved for expedited handling by the Warden on September 8, 2023. In the grievance Plaintiff alleges he arrived at Shawnee on May 8, 2023, and began to submit request slips to address three different teeth with "holes" that caused bad pain. (Doc. 1 at 11). Plaintiff explained that he was told there was no dentist because the dentist passed away, but that he would be seen soon. He further explains in mid-August he had a call pass for the dentist after languishing in pain for three months, but despite being seen and told his teeth were pretty bad, he was told he would have to be put on a waiting list. (Doc. 1 at

11-12). He complained he was told that staff had no say about access to the dentist, but also complained three other inmates had teeth pulled that same day. (Doc. 1 at 12).

In response, a grievance officer reported that Plaintiff was seen by a dentist on August 23, 2023, and was placed on the extraction list. The response further stated,

> [W]e do not have a full-time dentist here at Shawnee and rely on the fill-in dentist currently. We do not have control over when he comes to the facility, but your name is on the list for an extraction. The individuals that were seen and had extractions that day had already been on the extraction list, that is why they had it done that day. They have a process that they follow and we do not have control over that.

(Doc. 1 at 10). The grievance was deemed a "mixed action" because Shawnee did not have a full-time dentist, but Plaintiff was on the extraction wait list. The Warden affirmed this disposition on September 18, 2024, and Plaintiff signed the box to appeal on October 10, 2024. Ultimately, the Administrative Review Board indicated the grievance was not received on appeal until November 20, 2023, more than 30 days after the Warden's finding, so they refused to further consider the issue. (Doc. 1 at 9).

In a second grievance that Plaintiff dated September 18, 2023, Plaintiff alleged that he had been without dental care for 4 months. The grievance was assigned number 2023-10-275. It was stamped as received by the Warden's office November 1, 2023. (Doc. 33-1 at 11). Plaintiff complained that other people were receiving extractions and cleanings, but he was still in pain and unable to get care. (Doc. 33-1 at 11). In the grievance office response, the prison indicated,

> In response to the above grievance, there is a full-time dentist that will be starting here at Shawnee this month. The fill in dentist could only see so many people at a time and there is a list of people to be seen for various reasons. If you need to be seen by healthcare for possible dental infection

or for dental pain, please put in for NSC and healthcare will get you in to be seen.

(Doc. 33-1 at 10). The grievance was again marked as a "mixed action," because plaintiff "had been afforded healthcare but still needs to see the Dentist and Shawnee still does not yet have a full time Dentist." (*Id.*). The Warden affirmed on November 6, 2023, Plaintiff appealed, and the ARB received the appeal November 27, 2023. (Doc. 33-1 at 10). The ARB denied the grievance and noted the issue was "appropriately addressed" by the prison based on the fact that Plaintiff was placed on the extraction list in August of 2023. (Doc. 33-1 at 9).

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to

exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). The regulations first require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint,

including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the names of the individuals are unknown to the offender, he can still file the grievance but "must include as much descriptive information about the individual as possible." *Id.* Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO). 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who them makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e).

B. Analysis

The Court finds that the Motion for Summary Judgment can be resolved on paper without a *Pavey* hearing. The Defendant argues that Plaintiff did not file a grievance sufficient to exhaust the claims in this case because neither of the September 2023

grievances adequately identified a policy or practice of understaffing, as opposed to the single anomaly of a staffing shortage due to the former prison dentist dying. The Defendant contends that Plaintiff specifically pointed to the death of the prison dentist, which suggests he was grieving an isolated incident and not a policy or practice. They acknowledge that inmates are not required to place explicitly worded policy or practice claims in a grievance but must at least grieve "activities for which Wexford was responsible." Doc. 33 at 6.

To emphasize this distinction, Defendant cites to two decisions in other prisoner cases in this District wherein grievances about isolated problems were found insufficient to exhaust broader *Monell* claims against Wexford—*Morrow v. Wexford Health Sources, Inc.*, 2021 WL 3030329 (S.D. Ill. 2021) and *Haywood v. Wexford Health Sources, Inc.*, 2024 WL 1209899 (S.D. Ill. 2024). *Morrow* concerned an inmate who grieved care of specific healthcare providers and of the healthcare unit generally concerning anemia, and who grieved care issues with a chronic shoulder injury. *Morrow* effectively illustrates the distinction at play between a grievance sufficient to exhaust a claim against Wexford versus a grievance only sufficient to exhaust against a single party. In *Morrow*, the Plaintiff filed one grievance against a specific provider, one about a "policy" of the healthcare unit generally, and one about Wexford's lack of follow-up care and a specific providers role all in relation to his anemia. As for his shoulder condition, he filed just two grievances both targeted at specific interactions with the provider. The anemia grievances were considered sufficient to exhaust a policy claim against Wexford. By contrast, the shoulder grievances were found insufficient for a policy claim against

Wexford because they mentioned only discrete actions of a single provider. The *Morrow* Court noted that grievances can be sufficient against Wexford if they describe activities or decision-making for which Wexford was responsible, or if they grieve a "broad denial of proper treatment by the healthcare unit as a whole." *Morrow*, 2021 WL 3030329 at *4.

In *Haywood* the inmate grieved a single instance where he was taken to the healthcare unit after being sprayed with a chemical agent. He alleged the treating nurse allowed him to rinse his face but denied him an inhaler despite his asthma diagnosis. In the lawsuit, the inmate faulted the nurse, and also faulted Wexford for denying treatment or maintaining a policy of refusing treatment for alleged "staff assaulters." The Court found the grievance was insufficient as to Wexford because it singled out an interaction with a single nurse on a single occasion and made no mention of a broader lack of treatment or a policy concerning staff assaulters. *Haywood*, 2024 WL 1209899 at * 4.

The Defendants argue that Plaintiff's own situation is akin to *Morrow* and *Haywood* because his grievances discussed an isolated issue with the deceased dentist, rather than an issue with healthcare at large. This argument views Plaintiff's grievances too narrowly. It is incongruent to say that Plaintiff's grievances were focused on the conduct of one individual, as opposed to Wexford, because there is no reason for Plaintiff to lodge a grievance against a *deceased* dentist. Instead, the clear message with both of Plaintiff's grievances was that the healthcare unit or dental staff was failing to treat his three damaged or infected teeth because it was not adequately staffed. It is reasonable to assume, especially in light of the two grievance responses, that Wexford was responsible for staffing the dental unit. Thus, the issues grieved were directly within the scope of an

issue that Wexford was responsible for, and an issue that impacted healthcare at the prison as a whole. This is consistent with the finding in *Morrow*, that a plaintiff's grievances about the overall treatment for his anemia from the healthcare unit were sufficient to exhaust a claim against Wexford related to the same.

The Defendant also argues that Plaintiff's September 18, 2023, grievance was not sufficient to exhaust a claim because it generically faulted "y'all" which Wexford defines as "unidentified individuals at the prison," rather than alleging it was a Wexford policy or practice at play. Again, this interpretation reads the grievance too narrowly. In the September 18 grievance, Plaintiff is plainly faulting the medical or dental staff as a whole for the lack of dental care, and the grievance response indicates the lack had been caused by a gap in staffing. This plainly goes to the notion that Plaintiff's issue was caused by something Wexford controlled, staffing.

The Court understands Wexford's point that perhaps this was a short-term staffing problem caused by a death, rather than a broader policy of understaffing, but that is an argument that goes to the merits of the claim, rather than the limited issue of exhaustion. Thus, the Court finds that Plaintiff's grievances were sufficient to exhaust the staffing claim against Wexford, and this case may proceed to merits discovery.

## Motion for Counsel

Plaintiff has a pending Motion for Recruitment of Counsel (Doc. 31). In the Motion he explains he has written many attorneys for assistance but has not received any responses. (Doc. 31 at 1). He indicates that he has "some high school" education, but also checked a box indicating he cannot speak, write and/or read English very well. (Doc.

1 at 2). The form called for an explanation of Plaintiff's limitations on English, but he did not provide one, and gave no other narrative explanation for his need for counsel. At the time Plaintiff filed the Motion he was incarcerated, but he has since been released and has updated his address. (Doc. 36).

Civil litigants do not have a constitutional or statutory right to counsel. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007); *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995). Under 28 U.S.C. § 1915(e)(1), however, this Court has discretion to recruit counsel to represent indigents in appropriate cases. *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). In evaluating whether counsel should be appointed, this Court must examine what are known as the *Pruitt* factors and apply them to the specific circumstances of this case. *Santiago v. Walls*, 599 F.3d 749, 760 (7th Cir. 2010). The Court must ask: "'(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Id.* at 761, *quoting Pruitt*, 503 F.3d at 654.

Here, Plaintiff claims he attempted to contact counsel, to no avail, though he did not provide proof of his efforts. Even if Plaintiff attempted to recruit his own counsel, he has not satisfactorily demonstrated that he is unable to adequately represent himself in this matter. His complaint was short and easy to understand, and it was sufficient to proceed beyond initial review. It is also significant that he has now been released from prison, because this means he has a greater ability to seek his own counsel or to utilize outside resources to assist him in self-representation of this case. Accordingly, the Court now finds it appropriate to deny Plaintiff's Motion for Counsel without prejudice.

**DISPOSITION**

The Motion for Summary Judgment on the issue of exhaustion filed by Defendant (Doc. 32) is **DENIED**.  A merits discovery schedule will issue separately.

Plaintiff's Motion for Counsel (Doc. 31) is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 27, 2024

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge